```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

PRADEEP B. GUPTE                    :
                                    :
    Plaintiff,                     :
                                    :
v.                                  :    Case No. 3:17-cv-1484(RNC)
                                    :
UNIVERSITY OF CONNECTICUT,          :
                                    :
    Defendant.                     :

RULING AND ORDER

Plaintiff Pradeep B. Gupte brings this action pro se against the University of Connecticut ("UConn") alleging a retaliation claim under Title VII, 42 U.S.C. § 2000e-3(a). Pending are defendant's motion to dismiss the amended complaint, ECF No. 23, and plaintiff's motion for appointment of counsel, ECF No. 58. For reasons that follow, the motion to dismiss is granted and the motion to appoint counsel is denied.

I.  Background

The following facts are drawn from the amended complaint and documents in the record subject to judicial notice. Plaintiff was employed as an adjunct professor at Central Connecticut State University ("CCSU") from September 2004 to May 2005. ECF No. 38-2 at 10.[1] In 2007, he sued CCSU under Title

---

[1] The Court takes judicial notice of plaintiff's underlying complaint filed with the Commission on Human Rights and Opportunities ("CHRO"), which is attached to the motion to dismiss. ECF No. 23 at 2 ¶ 7; see, e.g., Anderson v. Derby Bd. of Educ., 718 F. Supp. 2d 258, 273 n.33 (D. Conn. 2010) (taking

1

VII alleging that it had refused to hire him for the fall semester of 2005 because of his race or national origin. <u>Gupte v. Central Conn. State University</u>, 3:07-cv-422(WWE). On July 11, 2009, plaintiff entered into a Settlement Agreement and General Release with CCSU and the State of Connecticut, resolving his claims against CCSU. ECF No. 38-2 at 3.[2] As part of the settlement, he agreed "not to apply, re-apply for or accept any future employment with any agency or subdivision of the State of Connecticut." <u>Id.</u>

In or about 2008-2009, plaintiff interviewed for a position at UConn's Hartford campus but was not hired. ECF No. 23 at 2. Plaintiff alleges that he was not hired because "CCSU gave a bad reference" to UConn, ECF No. 1 at 2, and that CCSU did so because he had filed the lawsuit in 2007. <u>Id.</u> at 7. Plaintiff alleges that UConn's failure to hire him "was an act of retaliation" and that his "name is 'flagged' in UCONN's Storr's

---

judicial notice of CHRO complaint attached to motion to dismiss).

[2] The Court takes judicial notice of the filings and the settlement agreement in <u>Gupte v. Central Conn. State University</u>, 3:07-cv-422(WWE) because plaintiff has referenced the prior case, ECF No. 23 at 11, and because plaintiff has signed the document and it is essential to his claims, ECF No. 38-2 at 5. See <u>Shakur v. Bruno</u>, No. 3:12cv984(SRU), 2014 WL 645028, at *1 (D. Conn. Feb. 18, 2014) (finding that courts have taken judicial notice of settlement agreements in other cases "where the plaintiff has referenced the other case, or where the plaintiff has knowledge of the document and the document was integral to the plaintiff's claims") (citing cases).

campus where 'H-R Dept' of UCONN is located." Id. at 2.

From January 2012 to May 2015, plaintiff worked as an adjunct professor at Norwalk Community College ("NCC"). ECF No. 38-2 at 10. From September 2015 to May 2016, he worked as an adjunct professor at Western Connecticut State University ("WCSU"). Id. Both NCC and WCSU are operated by the State of Connecticut. ECF No. 23 at 6.

In 2016, plaintiff interviewed for a position at UConn's Stamford campus. ECF No. 23 at 2. During the interview, the interviewer told plaintiff he "was as good as 'hired.'" Id. at 11. But plaintiff was not hired. Id. at 2. Plaintiff alleges that UConn's failure to hire him in this instance was a "continuing act of retaliation which started around → (2008-2009) and was going on until Sept[ember] 1, [20]16." ECF No. 1 at 2.

On November 17, 2016, plaintiff filed a CHRO complaint alleging that defendant retaliated against him by refusing to hire him due to his lawsuit against CCSU. ECF No. 38-2 at 8. Plaintiff's CHRO complaint focuses on the 2016 incident, but mentions that he was first prevented from obtaining employment at UConn "in or about 2009."

On July 24, 2017, the CHRO provided plaintiff with a right-to-sue letter, releasing jurisdiction over the claims in his complaint. ECF No. 1 at 10-12; ECF No. 23 at 2.

3

II. Discussion

UConn argues that (1) plaintiff's action under Title VII is barred by the Settlement Agreement and Release pertaining to his 2007 lawsuit against CCSU; (2) plaintiff has failed to exhaust administrative remedies with regard to UConn's failure to hire him in or about 2008-2009; (3) the claim based on the 2008-2009 failure to hire is time-barred under Title VII; (4) plaintiff has not alleged sufficient facts to support a plausible Title VII retaliation claim with regard to UConn's failure to hire him in 2016; and (5) plaintiff's action should be dismissed for lack of personal jurisdiction and insufficiency of process pursuant to Fed. R. Civ. P. § 4(j)(2).  I agree that the Title VII claim based on the 2008-2009 failure to hire is time-barred and that plaintiff has failed to state a plausible retaliation claim under Title VII with regard to the 2016 failure to hire. Because the action must be dismissed on this basis, I do not reach UConn's other arguments, and decline plaintiff's request for appointment of counsel.

    A. Failure to Hire in 2008-2009

UConn argues that its failure to hire plaintiff in 2008-2009 cannot provide a basis for relief under Title VII because plaintiff failed to file a timely charge of discrimination with the EEOC or CHRO as required by the statute. I agree.

Title VII mandates that any claim of discrimination "shall"

4

be filed with the EEOC within 180 or 300 days "after the alleged unlawful employment practice occur[s]." 42 U.S.C. § 2000e-5(b), (e)(1). When a person complains about discrimination by a state or political subdivision, he or she has 300 days to file a charge. Fort Bend Cty., Texas v. Davis, 139 S. Ct. 1843, 1846.[3]

It is apparent that plaintiff did not file a charge with the EEOC or CHRO within 300 days of UConn's failure to hire him in 2008-2009. Neither the complaint nor the numerous filings submitted by plaintiff in response to the motion to dismiss contains any suggestion that a timely charge was filed. In his submissions to the CHRO in 2016, which are attached to the original complaint here, plaintiff referred to two failures to hire: "first during 2008-2009 (Hartford Campus of UCONN) & 2nd time during Fall 2016 (Stanford campus)." Id. at 19. There is no indication anywhere in plaintiff's submissions to the CHRO that the 2008-2009 failure to hire had been the subject of a previous charge. In his original complaint here, plaintiff alleged that he had suffered a "continuing act of retaliation" from 2008-2009 to 2016. ECF No. 1 at 2. This allegation reinforces the conclusion that plaintiff filed no charge with

---

[3] Plaintiff cites Fort Bend for the proposition that exhaustion is not required. ECF No. 53. However, Fort Bend merely holds that the exhaustion requirement is not a jurisdictional requirement, and therefore must be raised in a timely motion. 139 S. Ct. at 1850-51. Defendant has timely raised the exhaustion requirement in its motion to dismiss.

5

the EEOC or CHRO until 2016.  Given this record, it must be concluded that no charge was filed within 300 days of UConn's allegedly discriminatory failure to hire the plaintiff in 2008-2009.

Under Title VII, plaintiff was required to file a charge within 300 days of the 2008-2009 failure to hire or lose the ability to recover for it.  Plaintiff's allegation of a continuing violation stretching from 2008-2009 until 2016 does not enable him to avoid the bar created by his failure to file a timely charge with regard to the alleged discrimination that occurred in or about 2008-2009.  In Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court rejected the view that "a series or pattern of 'related discrete acts' could constitute one continuous 'unlawful' employment practice for purposes of calculating the time for filing a charge under Title VII.  Chin v. Port Authority of New York & New Jersey, 685 F.3d 135, 156 (2d Cir. 2012) (quoting Morgan, 536 U.S. at 111).  Rather, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  Morgan, 536 U.S. at 113 (emphasis added).  Under Second Circuit law, the continuing violation exception to the Title VII limitations period applies only when a plaintiff files an EEOC charge "that

6

is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination." Chin, 685 F.3d at 155.

Here, plaintiff's CHRO charge does not allege a policy of discrimination. Instead, as just discussed, it references two failures to hire: one in 2008-2009, and one in 2016. ECF No. 38-2 at 8-9. In Morgan, the Supreme Court specifically identified a "refusal to hire" as a "[d]iscrete act." Morgan, 536 U.S. at 114. Accordingly, UConn's allegedly unlawful failure to hire the plaintiff in 2008-2009 must be viewed as a discrete act of discrimination that triggered the running of Title VII's 300-day limitations period. Because plaintiff did not file a complaint with the CHRO until 2016, his Title VII claim based on the 2008-2009 failure to hire is time-barred.

B. Failure to Hire in 2016

UConn argues that plaintiff's allegations with regard to the 2016 failure to hire are insufficient to satisfy the elements of a retaliation claim under Title VII. I agree with this argument as well.

To adequately allege a Title VII retaliation claim, a plaintiff "must plausibly allege that: (1) defendants discriminated – or took an adverse employment action – against [him], (2) 'because' [he] has opposed any unlawful employment practice. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015) (citing 42 U.S.C. § 2000e-3(a)). A plaintiff

must "plausibly plead a connection between the act and his engagement in protected activity." Id.  The plaintiff must also "plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." Id. (quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013)).

Proof of causation can be shown either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000).

Plaintiff's allegations are insufficient because he alleges no facts permitting an inference of a causal connection between his protected activity and the alleged retaliation.  His protected activity – filing a Title VII lawsuit against CCSU – occurred in 2007.  The allegedly retaliatory failure to hire occurred approximately nine years later in 2016.  Such a large gap in time does not support a reasonable inference of causation.  See Robles v. Cox and Co., Inc., 841 F. Supp. 2d 615, 629 (E.D.N.Y. 2012) (no causal connection can be inferred from approximate ten year gap between filing of lawsuit and adverse employment action); see also Richardson v. New York

State Dep't of Corr. Servs., 180 F.3d 426, 447 (2d Cir. 1999) (no causal connection could be inferred from two year gap between protected activity and adverse employment action).

Plaintiff alleges that a UCONN professor told him UConn received a negative reference from CCSU during plaintiff's 2008-09 interview.  ECF No. 1 at 20.  Accepted as true, this allegation concerning a negative reference from CCSU to UConn in 2008-2009 does not support a retaliation claim with regard to UConn's failure to hire the plaintiff in 2016.  Even if it were reasonable to infer that CCSU likely provided substantially the same negative reference in 2016, there is no allegation that the reference mentioned anything about the 2007 lawsuit.  Furthermore, plaintiff's employment by two other state entities (NCC and WCSU) from January 2012 to May 2016 significantly undercuts any inference that UConn's failure to hire him was motivated by retaliatory animus based on his suit against another state entity in 2007.

"Engaging in protected activity does not entitle an [applicant] to a lifelong presumption of retaliation for any adverse employment action." Robles, 841 F. Supp. 2d at 630. The gap between plaintiff's lawsuit against CCSU in 2007 and UConn's allegedly retaliatory failure to hire him in 2016, "without any additional factual allegations suggesting the existence of a causal connection, belies the plausibility of the

plaintiff's retaliation claim." Id. (dismissing retaliation claim based on plaintiff's filing of a lawsuit ten years prior to the alleged retaliatory event). Plaintiff's additional factual allegations concerning the 2016 failure to hire, including his allegation that the interviewer told him he was "as good as hired," do not support a reasonable conclusion that UConn would have hired him were it not for the lawsuit he filed against CCSU in 2007. The claim based on the 2016 failure to hire is therefore dismissed for failure to state a claim on which relief may be granted.

      C. Motion to Appoint Counsel

    The Second Circuit has cautioned against the routine appointment of counsel and has reiterated the importance of requiring an indigent plaintiff to demonstrate the likely merit of his claims before counsel is appointed. See, e.g., Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 203-04 (2d Cir. 2003); Henricks v. Coughlin, 114 F.3d 390, 393 (2d Cir. 1997). "[E]ven where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim[.]" Ferrelli, 323 F.3d at 204 (citation omitted). For the reasons discussed above, I have concluded that the action must be dismissed. I also conclude that plaintiff's claims do not have a sufficient basis to warrant appointment of counsel.

III.   Conclusion

Accordingly, the motion to dismiss the amended complaint is hereby granted and the motion for appointment of counsel is denied.  Plaintiff's numerous submissions since the filing of the motion to dismiss provide no basis to think that he could cure the deficiencies in his claims were he given an opportunity to file another amended complaint.  Accordingly, the Clerk may enter judgment and close the case.

So ordered this 30th day of March 2020.

/s/ RNC
Robert N. Chatigny
United States District Judge
